# UNITED STATES DISTRICT COURT
# DISTICT OF COLUMBIA

**Kimcuong Huynh,**

    **Plaintiff,**

  v.                                     **Case No.  CV-19-2933**
                                              **JURY TRIAL DEMANDED**

**Kevin McAleenan,**
    **Acting Secretary,**
    **US Department of**
    **Homeland Security,**

    **Defendant.**

# COMPLAINT

NOW COMES the Plaintiff, Kimcuong Huynh, by her attorney, Joy Bertrand, to allege this complaint against Kevin McAleenan, the Secretary of United States Department of Homeland Security as follows:

## PARTIES

1. The Plaintiff, Kimcuong Huynh, is a special agent with the United States Department of Homeland Security (hereinafter "DHS").

2. The Plaintiff, Ms. Huynh, presently resides in Houston, Texas.

3. Kevin McAleenan is the Secretary of DHS.

4. DHS is headquartered in Washington, District of Columbia.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction over this matter pursuant to 28 USC § 1331 and 134(a)(4) and 42 USC §§ 2000e, in that Ms. Huynh's cause of action arises under Title VII, Pub. L. 703 and 704.

6. Venue in this district is proper under 28 USC § 1391(e)(2) and 42 U.S.C. § 2000e-5(f)(3).

## PROCEDURAL STATEMENT OF FACTS

7. Between May and June 2018, Plaintiff was the subject of prohibited harassment and hostile work environment, as prohibited by Title VII of the Civil Rights Act of 1964.

8. Kimcuong Huynh is a GS 1811-13 special agent with DHS Office of Inspector General, assigned to the Houston Field Office.

9. Ms. Huynh is a Vietnamese woman. When she was a child, she came to the United States as a refugee. Her family escaped Vietnam on a small fishing boat from Vietnam and spent time in the refugee camp awaiting resettlement. She and her family lost everything in Vietnam due to the War and were lucky to escape with the clothes on their backs.

10. Ms. Huynh attended school in the US and started her federal law enforcement career as a Special Agent of the U.S. Immigration and Naturalization Service (USINS).

11. In the Spring of 2018, Ms. Huynh volunteered to work a temporary duty

(TDY) in the U.S. Virgin Islands. While on TDY to St. Thomas office, Ms. Huynh reported directly to San Juan Office.

12. On June 14, 2018, Ms. Huynh received a memo from her colleague, Special Agent Ismael Velez about crude, sexist comments he heard that Puerto Rico Resident Agent in Charge, Jose Adams, Administrative Officer Maritza Santiago, and Special Agent Jose Ramos made about her.

13. On June 15 and 16, 2018, Ms. Huynh spoke with her Houston managers, Assistant Special Agent in Charge Mike Martin and Special Agent in Charge David Green about SA Velez' memo.

14. Ms. Huynh sent an email following up on her conversations with Martin and Green, asking that her TDY to the Virgin Islands be terminated.

15. On June 20, 2018, Ms. Huynh returned to Houston.

16. On June 26, 2018 Ms. Huynh contacted [hqeeo@hq.dhs.gov](mailto:hqeeo@hq.dhs.gov) to file her EEO complaint with the Agency.

17. That same day, she received an email response from James Cooley ([James.Cooley@HQ.DHS.GOV](mailto:James.Cooley@HQ.DHS.GOV)), who provided the Agency's HQ EEO Information Package as well as information on the agency's Anti-Harassment Unit, and HQ EEO Intake Form.

18. On July 12, 2018, Ms. Huynh sent the EEO Intake Form to Mr. Cooley.

19. On July 24, 2018, Ms. Huynh received an email from Cooley, notifying her of the assignment of an EEO Counselor-Huynh (HQ-02207-2018).

20. On August 9, 2018, the Agency issued its final report regarding Ms. Huynh's informal complaint and a Notice of Rights to File a Discrimination Complaint.

21. On August 22, 2018, Ms. Huynh Submitted Formal Complaint (DHS FORM 3090-1) via email to James Cooley.

22. On August 22, 219, Ms. Huynh also sent the Formal Complaint via USPS Certified Mail, Receipt 7016-0600-0000-1905-3275.

23. On or about August 30, 2018, the Agency received the Formal Complaint (HS-HQ-02207-2018).

24. On July 2, 2019, the Agency issued its Final Action.

## SUPPORTING FACTS

25. On May 21, 2018, Ms. Huynh was working on a TDY in Saint Thomas, USVI, regarding fraud investigations related to Hurricane Maria.

26. Ms. Huynh's work location was the US Attorney's Office in St. Thomas.

27. Ms. Huynh needed office supplies, such as pens, files, labels, and folders.

28. Ms. Huynh contacted another special agent on TDY, Ismael Velez, to see if he could forward a list to the San Juan Administrative Officer to process, so that they could perform their duties at that island.

29. SA Velez told Ms. Huynh that he would forward the information to the Administrative Officer for processing.

30. On information and belief, Ms. Huynh's email requesting the supplies was immediately forward it to Maritza Santiago, the San Juan Field Office Administrative Officer.

31. On May 22, 2018 while working from the San Juan OIG Office SA Velez heard Santiago complain to Resident Agent in Charge Jose Adams that Ms. Huynh was requesting supplies for the Saint Thomas office.

32. Santiago stated to Adams that she believed that Ms. Huynh was a "jodona," which means "bitchy," because Ms. Huynh had just arrived to the TDY and had the audacity to ask for office supplies.

33. Immediately after Adams and Santiago's conversation finished, Adams headed to Velez's office, stood in the doorway of Velez' office, and said loudly that any supplies coming from the San Juan were to be processed through him and Santiago alone.

34. Velez responded to Ms. Huynh he was not processing any supplies, but only forwarding an email request from me.

35. Adams repeated that the supplies are to be processed through him and Santiago alone.

36. Adams then said "se acabo esta mierda ahora" translated to English "this shit is over now," right before leaving Velez' office.

37. On May 24, 2018 Velez was at his desk and heard SA Jose Ramos and AO Santiago talking to Adams about me. I had brought to their attention concerns about a case that was being referred for prosecution. I had told them of findings within EDS that could affect the case discovery, as there were NCIC records attached to MOA's etc.

38. After their conversation concluded, Ramos went to Velez' office and asked if he had ever worked with Ms. Huynh, to which Velez replied "yes."

39. Ramos stated that he does not know who Ms. Huynh thinks she is and that Ms. Huynh was acting as if he, Ramos, had never handled a criminal case.

40. Ramos stated that Ms. Huynh was the "typical agent," who comes from the US and does not know how things are handled in Puerto Rico.

41. While Ramos was making those comments Adams and Santiago appeared in Velez's office doorstep to join Ramos.

42. Santiago yelled "Tell that Vietnamese that the war is over" at least three times.

43. Santiago further said, "When was the last time she had sex?"

44. Adams said, "I was planning to go to Saint Thomas to meet the new TDYs and "ahora que se jodan." )English translation "now they can go fuck themselves.")

45. Adams further stated, "If they come here to bring more work we won't be able to do anything in this Island."

46. Ramos stated in that conversation that he has handled cases valued at millions of dollars and had never turned over to the US Attorney everything in the file as discovery.

47. Ramos stated he picks and chooses what he wants to provide as discovery for the prosecutor.

48. Adams stated "in this office we handle real cases and not $1,000 dollar cases like you guys" meaning the Houston SAC DHS OIG Office.

49. Adams further stated, "If an agent in this office brings me a $1,000 case I will personally file charges against that Agent."

50. During the entire duration of that conversation, Adams did not tell Santiago to stop making the sexual or racial comments about Ms. Huynh.

51. On approximately June 14, 2018, Ms. Huynh learned of the prohibited harassment and hostile work environment being directed towards her by members of the San Juan, Puerto Rico field office.

52. SA Ismael Velez, who was assigned to San Juan Office for TDY from the Dallas Office provided me a copy of a memorandum, which he submitted to DHS management.

53. SA Velez' memorandum reported disgusting, offensive, and hurtful comments made specifically towards me by the management and staff from the San Juan Office.

54. When Ms. Huynh received the memorandum and read it several times, she felt physically sick to her stomach.

55. The sexual comments were demeaning and degrading to Ms. Huynh, as they would be to any reasonable employee.  The sexual comments were exacerbated, considering the way Vietnamese women often are portrayed in Vietnam War movies.

56. Before this experience, Ms. Huynh never had comments made towards her in that manner, let alone by a female employee.

57. The fact that a Senior manager of the DHS-Office of Inspector General condoned the comments and possibly joined in the comments was particularly disheartening to Ms. Huynh.

58. This experience has caused Ms. Huynh considerable anxiety and emotional distress.

59. Upon learning of the statements made by her managers and coworkers, Ms. Huynh did not feel safe working in St. Thomas and she asked to return early from her TDY.

60. Ms. Huynh could not comprehend why she was treated this way by the San Juan Office management and staff.

61. Ms. Huynh felt was disrespected and insulted, as she is a second-class citizen.

62. Ms. Huynh had volunteered to assist the San Juan Office from May 13, 2018 to July 12, 2018; after learning of the offensive and hostile treatment towards her, she asked to terminate the TDY early, because she did not feel safe in St. Thomas.

63. Ms. Huynh did not share her experience with her family, because it would be so hurtful to them. The managers' and coworkers' comments would have particularly hurt her eldest brother, who was held in a Communist reeducation camp after the Vietnam War.

**The Agency's Prior Knowledge of Adams' Similar Conduct**

64. On information and belief, Miami SAC Donnelly had been previously advised regarding Adams' conduct toward other employees, but nothing was done.

65. On information and belief, during one of Donnelly's visits to San Juan some employees informed him of the atmosphere created by Adams, in hopes that Donnelly would address the situation.

66. On information and belief, instead, Adams scheduled a meeting with the employees and informed them that Donnelly made him aware of the complaints. Adams told the employees that Donnelly had provided more power to deal with them.

67. S.A. Reynaldo Sanchez stated that Adams told his employees that he would physically fight with all three of the complaining employees.

68. On information and belief, one employee, SA Reynaldo Sanchez, a Hispanic male, stated that he feared that if he reported Adams he would not be considered for a CORE position that was made available in recent weeks.

69. Adams threatened the employees not to leave on TDY, as he would make sure they be assigned more work than ever upon their return from Hurricanes Maria & Irma.

70. Adams' unprofessionalism generated a lack of respect between the employees themselves.

71. Adams made negative statements about employees to other employees, creating tension between them.

72. Sometimes Adams told employees to get out of his office, saying that what is important to them is not important to him.

73. In one occasion, he boasted to another agent that SA Sanchez is lucky to be sixty-years-old, otherwise Adams would have punched him in the face a long time ago.

74. Adams made similar comments directed to other employees. For example, Adams stated, in front SA Lujan, how he would punch the agent in the face and he would not be able to utilize any of his training in Jiu-jitsu.

75. Although throughout the 60 TDY days Adams made physical fighting comments directed toward another agent in at least two occasions, the agent continued to be calm and professional.

76. SA Lujan approached SA Velez afterword in one of the occasions the fighting comment was made and told S.A. Velez he could not understand why a person in a managerial position would make such comments.

77. In multiple occasions, Adams made comments inferring that the work at Ms. Huynh's office, the Houston SAC DHS OIG, was not important as the TDY agents were just tagging along to stat cases taken to the State Judicial level.

78. S.A. Lujan and S.A. Velez concluded that no one from the Miami office volunteered to assist one of their own sub-offices because they had knowledge of the way Adams handles matters in the San Juan Office.

79. In one occasion, Adams had a teleconference with members of upper management of the DHS OIG office.

80. After the discussion, Adams came out of his office and started making fun of Deputy Assistant Inspector General–Investigations James Beauchamp's accent, stating no one can understand him, as he is a hillbilly from Texas who probably wears a cowboy hat.

83. After that teleconference, Adams would refer to DAIG Beauchamp and "Bichon" which is a slang Spanish word that means "penis" or "dick" in English.

# PLAINTIFF'S CAUSE OF ACTION AGAINST DEFENDANT FOR INTERFERING WITH PLAINTIFF'S RIGHTS UNDER 42 USC § 2000e

## COUNT ONE
## (SEX-BASED EMPLOYMENT DISCRIMINATION)

82. Ms. Huynh realleges Paragraphs 1 through 81, above, as if fully realleged herein.

83. When the managers witnessed and participated in disparaging comments about Ms. Huynh, such as Agency discriminated against Ms. Huynh, in violation of Title VII of the Civil Rights Act of 1964, Pub.L. 88-352 § 703, and 29 CFR §§ 1606.1 and 1604.11.

## COUNT TWO
## (RACE-BASED EMPLOYMENT DISCRIMINATION)

82. Ms. Huynh realleges Paragraphs 1 through 81, above, as if fully realleged herein.

83. When the managers witnessed and participated in disparaging comments about Ms. Huynh, such as, but limited the Vietnam War being over, the Agency discriminated against Ms. Huynh based on her race (Asian), in violation of Title VII of the Civil Rights Act of 1964, Pub.L. 88-352 § 703, and 29 CFR §§ 1606.1 and 1604.11.

### COUNT THREE
### (NATIONAL ORIGIN-BASED EMPLOYMENT DISCRIMINATION)

82. Ms. Huynh realleges Paragraphs 1 through 81, above, as if fully realleged herein.

83. When the managers witnessed and participated in disparaging comments such as, but not limited to, the "war" being over, the Agency discriminated against Ms. Huynh, because of her national origin, in violation of Title VII of the Civil Rights Act of 1964, Pub.L. 88-352 § 703, and 29 CFR §§ 1606.1 and 1604.11.

### COUNT TWO
### (HOSTILE WORK ENVIRONMENT)

84. Ms. Huynh realleges Paragraphs 1 through 81, above, as if fully realleged herein.

85. The unwelcome conduct described above created a hostile work environment that became a condition of continued employment and was is severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

## DAMAGES

86. Ms. Huynh was damaged by the Agency's violations of the Civil Rights Act of 1964, as amended by 42 U.S.C. 2000e-2(a) and 3(a), Title VII of the Civil Rights Act of 1964, Pub.L. 88-352 § 703, 42 U.S.C. § 12101, *et seq.* inasmuch as:

   a. Ms. Huynh has lost wages, overtime pay, retirement fund contributions, and other benefits as a result of the Agency's refusal to train and promote Ms. Panarello.

   b. Ms. Huynh has sustained pain, suffering, and emotional distress from the Agency's discriminatory conduct.

   c. Therefore, Ms. Huynh asks this court to award her compensatory and pecuniary damages, in an amount to be determined by a jury, plus interest, for the Agency's violation of her rights.

   d. Ms. Huynh also seeks judgment favor of the Plaintiff and against the above-named Defendant for punitive damages for the injuries,

damages, and violation of Ms. Huynh's rights, as set forth above, in an amount to be determined at a trial in this matter.

87.    Ms. Huynh had to hire attorneys to handle this matter.  She therefore also seeks recovery of his attorney fees and costs, pursuant to 42 U.S.C 2000e-5.

WHEREFORE, Plaintiff requests this Court to enter a Judgment in her favor, plus interest for compensatory and pecuniary damages and punitive damages.  She further seeks attorney fees and costs and such other relief as may be just and proper.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY**

Respectfully submitted this Thirtieth day of September, 2019.

> s/Joy Bertrand
> Joy Bertrand
> Attorney for Plaintiff

Joy Bertrand
Joy Bertrand, Esq., LLC
PO Box 2734
Scottsdale, AZ  85252-2734

District of Columbia District Court Bar Number AZ0014